## McCONIHE & Co., *v.* JOHN McMANN.

### *Sale of intoxicating liquors.*

A sale of intoxicating liquors in the state of New York, by a merchant of that state, to a person residing in this state, which was induced by no act of the seller, or of any authorized agent of his in this state, is to be regarded as a New York transaction, and will be governed by the laws of that state.

But no recovery can be had in the courts of this state for intoxicating liquors sold by a merchant in New York, to a person residing in this state, in pursuance of a contract made, or

of orders sent by an agent of the seller in this state, who had notice at the time of making said contract, or receiving said orders, that they were to be sold in this state without a license therefor.

Assumpsit for goods sold and delivered. Plea, general issue, trial by the court, November Term, 1854,—Peck, J., presiding.

The plaintiffs claimed to recover for a bill of liquors sold to the defendant, February 28, 1851, amounting to $233,31, and for several other bills of liquors sold to him after that time amounting to about $350,00, after deducting payments therefor to the amount of about $173,00. It appeared that, during that time the plaintiffs were doing business in Troy, N. Y.; that a short time previous to the 28th of February, 1851, one Gaylard was at Burlington, and was applied to by the defendant to assist him in obtaining a credit in Troy, for the purpose of buying some liquors. Said Gaylard informed the defendant that he thought he might obtain them of the plaintiffs, and, at his suggestion, the defendant made an order for the bill of liquors charged under date of February 28th, and delivered it to Gaylard who forwarded it to the plaintiffs, with a recommendation of the plaintiff as worthy of credit. The plaintiffs, upon receiving the order, after having made inquiries as to the defendant's responsibility, put up the liquors and delivered them to the carrier at Troy to be forwarded to the defendant at Burlington, at his expense and risk, and there the defendant subsequently received them. Gaylard, at this time, was not in the employment of the plaintiffs, received from them no compensation, but acted upon the request of the defendant, and without any knowledge by the plaintiffs of the defendant's intention to apply to them, or of Gaylard's connection with the matter, until the order was received by them.

After this Gaylard was employed by the defendants to travel and solicit orders on them, and while so employed, received from the defendant verbal orders on the plaintiffs for the liquors subsequently furnished, which he transmitted to the plaintiffs at Troy, where they were received and answered in the same way that the defendant's first order was. During all this time the defendant was a tavern keeper in Burlington, and purchased the liquors to sell as such tavern keeper without license, and this was known to Gaylard; and at the time of all the sales, except the first, the plaintiffs

knew that the defendant was a tavern keeper, and that he pur-
chased the liquors to sell in that capacity; but they were not aware
of the particular provisions of the law in this state, or that the
defendant could not legally sell such liquors within the state, but
they supposed there was some law requiring a license in order to
sell them.   While Gaylard was in the employ of the plaintiffs, he
solicited orders upon them for liquors, and agreed with the purchas-
ers as to the quantity, price, time, and quality, and specified the
same in the orders forwarded to the plaintiffs, and the plaintiffs
always adopted his acts and forwarded the liquors agreeably to his
orders, if they were satisfied that the purchasers were responsible
or worthy of credit, and it was the understanding of all parties that
the plaintiffs should do so.   The defendant insisted that the plain-
tiffs could not recover for any portion of the account, on the ground
that the transactions were illegal.   The court rendered judgment
for the plaintiff to recover $87,31 and interest, being the item of
$233,31 for the first bill of liquors, deducting therefrom the pay-
ments that had been made; and disallowed the other sales on the
ground that they were in violation of the statute prohibiting the sale
of intoxicating liquors, and to this decision both parties excepted.

*Peck & Harvey* and *J. Maeck* for the plaintiffs.

The sale and delivery of the first bill was at Troy, the freight
and charges from there being paid by the defendant.   In its essen-
tial particulars the contract was wholly made out of the state, and,
therefore, was not a violation of our law.   *Case* v. *Riker*, 10 Vt.
482.   *Territt et al.* v. *Bartlett*, 21 Vt. 184.   *Smith & Wood* v. *Allen
& Stafford*, 23 Vt. 298.

The subseqent sales were at Troy, and nothing having been done
by the seller beyond what was requisite to sale and delivery, they
are valid here on the principle that a contract valid by the law of
the place where made is valid everywhere.   Until an order was
received and accepted at Troy, there was no contract, as until then
the minds of the parties did not unite.   *M'Intyre* v. *Parks et al*,
3 Met. 207.   Chitty on Con. 12, 14.

*Phelps & Chittenden* for the defendant.

The items disallowed were charges for intoxicating liquors, deliv-
ered to the defendant by the plaintiffs under a contract of sale made

by Gaylard, the agent of the plaintiffs, with the defendant in this state, and for them no recovery can be had. *Territt* v. *Bartlett,* 21 Vt. 184.

The facts found in reference to the items allowed, make the plaintiffs participators in the unlawful act of the defendant. *Territt* v. *Bartlett, ub. sup. Lightfoot* v. *Tenant,* 1 B. & P. 551. *Cannan* v. *Bryce,* 5 E. C. L. 255.

The opinion of the court was delivered by

BENNETT, J. No well grounded objection can be made to the plaintiffs' right to recover for the bill of liquors sold on the 28th of February, 1851. They were sold in the state of New York, and no acts were done in this state by the plaintiffs, or any authorized agent of theirs, to induce the sale. Though Gaylard recommended the defendant as worthy of credit, and sent on his order for the liquors, yet it is found that he then acted solely at the request of the defendant, and purely in his behalf, and was not at that time in the employ of the plaintiffs. This, then, was altogether a New York transaction, and is to be governed by the laws of that state.

A different state of facts exists, as to the subsequent bills. The defendant was a tavern keeper at Burlington, and purchased the liquors to sell without having a license, and this was known to Gaylard at the time of the sale; and the plaintiffs themselves were aware that the laws of this state required a license for the sale of spirituous liquors, although not of its particular provisions. Notice to Gaylard that the defendant purchased them to sell without having a license was notice to the plaintiffs. Gaylard, at the time these bills were made, was in the employ of the plaintiffs in vending spirituous liquors, and agreed upon the quantity, price, time of payment, and quality of the liquors, and specified the same in his orders to the plaintiff, all of which was done in this state by the agent. Though done subject to the approval of the plaintiffs, yet it is found they always adopted the acts of Gaylard, and forwarded the liquors agreeably to his orders, if satisfied with the solvency of the purchasers, and the case finds that it was the understanding of the parties that they should do so. The plaintiffs were then *aiding* the defendant to violate a statute law of this state, with a knowledge that it was his intention so to do. They sent their agent into

this state to vend liquors, and the plaintiffs sent them on by the common carriers agreeably to the contracts made by the agent. It is not material to inquire whether the purchase was finally consummated in this state or in the state of New York. The plaintiffs come into our courts with an ill grace to seek their aid in obtaining redress. They became *abettors* of the defendant in the violation of the law; and this case is within the principles of the case of *Lightfoot* v. *Tenant*, 1 Bos. & Pul. 551; of *Langton* v. *Hughes*, 1 Maul & Sel. 593; and of *Territt* v. *Bartlett*, 21 Vt. 184.

It is distinguishable from *Holman* v. *Johnson*, Cowp. 341, where the plaintiff had a mere *scienter*, but no connection *directly* or *indirectly* in the smuggling concern. The case of *M'Intyre* v. *Parks*, 3 Met. 207 was, decided upon the authority of *Holman* v. *Johnson*, and adopts the same distinction.

No question has been made in argument on the application of the payments, as allowed by the county court, and, perhaps, none can be made. At all events we are not disposed to raise any.

Judgment affirmed.