### Benjamin F. Gaylord *v.* John Soragen.

*Illegal contract.   Intoxicating liquors.*

Mere knowledge by the vendor of goods sold in another State that the vendee intends to use them in violation of the laws of this State, is not sufficient to invalidate the contract, when sought to be enforced here.   But if the vendor do anything, with such knowledge, beyond the sale of the goods, in aid of the illegal design of the vendee, he cannot maintain an action upon his contract in the courts of this State.

The plaintiff, being authorized to sell intoxicating liquors in the State of New York, sold some there to the defendant who resided here, and who intended to use them in this State contrary to law, and this illegal intent was known to the plaintiff.   The liquors were delivered in New York to a carrier, designated by the defendant, to be transported to Vermont at the latter's risk. But at the defendant's request, and for the purpose of preventing the seizure of the liquor for a violation of our laws, the plaintiff marked the casks in a peculiar way, omitting the defendant's name.   *Held*, that the plaintiff had so, far participated in the defendant's illegal design that he could not recover the price of the liquor in the courts of this State.

ASSUMPSIT for the price of a quantity of liquor sold by the plaintiff to the defendant.   Plea, the general issue and trial by jury at the September Term, 1858, in Chittenden county, BENNETT, J. presiding.

It appeared on trial that in January, 1857, the defendant, who resided and did his business at Burlington, in this State, purchased at Plattsburgh, New York, of the plaintiff, who dealt in liquors and resided in Plattsburgh, a quantity of intoxicating

liquors, which he directed the plaintiff to put up and forward to him at Burlington; and also requested him when he forwarded the liquor to put no other marks on the casks than a diamond mark with the letter S in it, and the testimony tended to prove that the purpose of having the casks so marked was to prevent their seizure by the officers in this State, for a violation of its laws, and that it was so understood by both parties at the time.

It further appeared that the plaintiff did put up and forward the liquor to the defendant as requested, and that it was marked as requested, and that it was delivered by the plaintiff to the persons designated by the defendant as carriers, in the State of New York, and was forwarded to the defendant at Burlington by them at his expense and risk, and that this was according to the arrangement made between the parties when the defendant purchased the liquors at Plattsburgh. It further appeared that this sale was valid by the laws of New York and that the plaintiff had the right to make it unless inhibited by the act passed by the legislature of that State in 1855, which is referred to in the case of *Wynehamer* v. *The People*, 3 Kernan 378. The witness on this point was a counsellor of law of the State of New York, who testified that the act of 1855 had been declared unconstitutional and void by the court of appeals of that State, but he based his evidence entirely on the reported case above mentioned. And the testimony tended to prove that the plaintiff, when he sold the liquors to the defendant, knew that the latter intended to sell them here in violation of the laws of Vermont.

On this evidence the defendant requested the court to charge the jury first, that although the courts in New York had declared, as it appears from the above reported case, certain portions of the act of 1855, unconstitutional and void, yet that the whole act was not void, and that by the 16th section of said act* the plaintiff could not recover in this case; and secondly, that if the jury found that the plaintiff did, at the defendant's request, mark the

* which provides that "no person shall maintain an action to recover the value or possession of any intoxicating liquors sold or kept by him which shall be purchased, taken, detained or injured by any other person, unless he shall prove that such liquor was sold according to the provisions of this act, or was lawfully kept or owned by him, &c.

casks in the manner above stated, for the purpose of enabling the defendant with more facility to prevent the seizure of the liquors under the laws of Vermont, the plaintiff was not entitled to recover.

The court refused to charge as requested, and directed a ver- for the plaintiff for the price of the liquor, to which the defend- ant excepted.

*J. Maeck*, for the defendant, cited Story's Conf. Laws, sec. 244, 251–5; *Lightfoot* v. *Tenant*, 1 Bos. & Pul. 451; *Langton* v. *Hughes*, 1 Maule & Sel. 593; *Waymell* v. *Reed*, 5 Term 594; *Biggs* v. *Lawrence*, 3 Term 459; *Clugas* v. *Penaluna*, 4 Term 466; *Territt* v. *Bartlett*, 21 Vt. 188; *Pellicat* v. *Angell*, 2 Cromp. Mees. & Ros. 311.

*W. G. Shaw*, for the plaintiff.

ALDIS, J.    I. We think the decision of the court of appeals, reported in 3 Kernan 378, establishes the unconstitutionality of the 16th section of the act of the State of New York passed in 1855, for the prevention of intemperance.    That section is obnoxious to the objections which were sufficient to induce the court to declare the act in other sections unconstitutional.    The contract between the plaintiff and the defendant was, therefore, valid by the laws of New York.

II. Mere knowledge by the vendor of goods selling them in a foreign State, that the vendee intends to use them in violation of the laws of this State, is not sufficient to invalidate the contract, when it is sought to be enforced in our courts.    Our own courts have recognized this rule; *McConihe* v. *McMann*, 27 Vt. 95. And it is now generally adopted in this country and in England, though the contrary doctrine has received the support of some eminent judges and jurists.

III. Although mere knowledge of the unlawful intent of the vendee by the vendor will not bar him from enforcing his con- tract to recover for the goods in our courts, yet it is well settled that if he in any way aid the vendee in his unlawful design to violate our laws, such participation in the illegal enterprise will

Gaylord *v*. Soragen.

disqualify him from maintaining an action on his contract in this State. The participation by the vendor must be active to some extent; he must do something, though indirectly, in furtherance of the vendees design to violate our laws. Mere omission to act is not enough, but positive acts in aid of the unlawful purpose, however slight, are sufficient.

In the case at bar, the defendant bought the liquors of the plaintiff at Plattsburgh, the plaintiff knowing that the defendant intended to bring them to Burlington and sell them in violation of our laws. It was understood by both parties that if the casks were marked with the defendant's name they would be in danger of being seized by our officers as soon as they arrived on this side of the lake. To prevent seizure by our officers the plaintiff, at the defendant's request, omitted to mark them with the defendant's name, and did mark them with a private mark, known to the defendant—a diamond with the letter S in it. Both parties understood that the object of so marking the casks was to enable the defendant with greater facility to save them from seizure.

Now this omission to mark them with the defendant's name, standing alone, would not, in our judgment, be an act of participation sufficient to bar the plaintiff. But the plaintiff went further, and the act done, though slight, is significant. He so marked them that the defendant might instantly know his casks on their arrival, and so be enabled to remove them before the officers of the State should have their suspicions awakened. This act, though so slight, gave the defendant an advantage over the officers and aided him in escaping from their vigilance. This was the object the plaintiff and the defendant intended to accomplish by having them so marked. We think the act done tended to secure their design.

If the plaintiff had put some false mark on the casks for the purpose of disguising their true character and of deceiving the public authorities, no one could doubt for a moment that that would be active participation in the unlawful purpose. The marks actually used tended to the same object, though not used for the purpose of deceiving the officers, but only of enabling the defendant with facility to escape their observation.

As the evidence tended to prove that the plaintiff, by his acts,

done in connection with the sale and delivery of the liquor, aided the defendant to escape the vigilance of the officers and so to have and to sell the liquors in violation of our laws, it should have been admitted. The refusal to allow it to go to the jury was error. Judgment reversed.